IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT W. BONNER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | |
| | § | No. 3:13-cv-4649-P-BN |
| WILLIAM STEPHENS, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Robert W. Bonner, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below, the application should be denied.

**Background**

In 2009, a Johnson County, Texas jury convicted Petitioner of six counts of aggravated sexual assault of a child, four counts of indecency with a child, and two counts of inducing a child to engage in sexual conduct or a sexual performance. He was sentenced to 99 years' imprisonment for the aggravated sexual assault convictions and 20 years' imprisonment for the other convictions. *See State v. Bonner*, F42790 (413th Judicial Dist. Court, Johnson County, Tex.). In 2010, his convictions and sentences were affirmed on direct appeal. *See Bonner v. State*, No. 10-09-00120-CR, 2010 WL 3503858 (Tex. App. – Waco Sept. 8, 2010, pet. ref'd). And, in 2011, the Texas Court of

Criminal Appeals ("TCCA") refused his petition for discretionary review and denied his motion for rehearing. *See Bonner v. State*, No. PD-1758-10 (Tex. Crim. App.).

Petitioner, through counsel, then filed a state application for a writ of habeas corpus. The trial court, after obtaining, among other evidence, sworn testimony through an affidavit submitted of Petitioner's trial counsel, *see* Dkt. No. 28-3 at 134-154, entered findings of fact and conclusions of law on November 13, 2012, *see* Dkt. No. 28-4 at 5-25. And the TCCA denied the application without written order on October 30, 2013. *See Ex parte Bonner*, WR-78,701-01 (Tex. Crim. App. Oct. 30, 2013).

Petitioner's federal habeas application was timely filed November 15, 2013.

The case against Petitioner was summarized by the Waco Court of Appeals on direct appeal as follows:

> The attention of law enforcement officials was first drawn to Bonner in May 2007 when his five-year-old son N.B. told a school resource officer that Bonner was growing marijuana in the home. Officers searched Bonner's home pursuant to a search warrant and recovered 646 marijuana plants, multiple computers, and about 1,400 CD's and DVD's. Child Protective Services removed his step-daughter L.D., his daughter M.B., and his son N.B. from the home.
>
> A forensic interview was conducted with each of the children at the Child Advocacy Center in November 2007, but no outcry was made. One month later, N.B. told his grandmother that he had seen Bonner "sexing" L.D. She reported this to CPS which did not pursue the matter because there had been no outcry during the November interviews. N.B. told a counselor the same thing in January 2008. A friend of L.D.'s, eleven-year-old K.A., made an outcry to officials in Indiana where her family had moved the previous summer. L.D. made an outcry to her mother in April 2008. During a second forensic interview in May, L.D. described what Bonner had done to her and to her twelve-year-old friend E.S. A forensic interview with E.S. was conducted several days later, and she described in a similar manner what Bonner had done to the girls.

A pediatric nurse testified that she examined L.D. in May 2008, about twelve months after she was last sexually assaulted, and found no physical evidence that L.D. had been sexually assaulted. The nurse explained that this is normal given the passage of time. The sexual assault examination for E.S. was done about eighteen months after she was last sexually assaulted. As with L.D., this exam disclosed no physical evidence that E.S. had been sexually assaulted.

The twelve counts of the indictment each allege an offense involving L.D. The two counts of inducing a child to engage in sexual conduct or a sexual performance involve L.D. and E.S.

2010 WL 3503858, at *1.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Because several claims made in Petitioner's federal habeas application, including many of the grounds raised to show that trial counsel was constitutionally ineffective, were adjudicated on direct appeal, those claims were adjudicated in a "State court proceeding," the decisions from which are due the same deference under Section 2254(d) as if the claims were adjudicated in state post-conviction proceedings. *See Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the TCCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings,"

to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012) ("Because all of Campbell's claims regarding ineffective assistance were adjudicated on the merits by the Ohio state courts either during direct appeal or on post-conviction review, § 2254(d) governs our standard of review." (citation omitted)); *cf. Pugh v. Warden, La. State Penitentiary*, No. 11-cv-2184, 2015 WL 1508434, at *3 (W.D. La. Mar. 30, 2015) ("The State asserts a procedural bar defense to this claim, and it probably has merit. It is easier, however, to address the claim on the merits since it was adjudicated on the merits on direct appeal and, therefore, entitled to a deference under Section 2254(d).").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus,

"[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct

and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## Analysis

## I.     Ground One – Ineffective Assistance of Trial Counsel

Petitioner asserts nine enumerated reasons, some of which overlap, for why his trial counsel rendered constitutionally ineffective assistance. While the Court will address each "sub-ground" in turn below, in his reply, Petitioner argues that Section 2254(e)(1)'s presumption of correctness does not apply to the state court determinations as to the alleged ineffectiveness of trial counsel because the state habeas court did not address each sub-ground with the particularity in which that sub-ground was

addressed in Petitioner's state habeas application. *See, e.g.*, Dkt. No. 29 at 1-2 ("Finding No. 1 focused only upon the 'predator' comment and failed to address the remainder of the argumentative comments in the state's improper opening statement...."); *id.* at 3 ("Finding No. 5 failed to consider that the Petitioner wore a leg brace and a stun belt in court during the trial in that this finding avoided any mention at all of the leg brace.").

Putting aside the propriety of raising such an argument for the first time on reply – particularly when the state habeas court findings and conclusions, as well as the standard under which a federal court treats such findings and conclusions, were well known to Petitioner's counsel when he filed his Section 2254 habeas application – the level of specificity in the state habeas court findings and conclusions that Petitioner demands is not necessary to trigger Section 2254(e)(1)'s presumption of correctness. That is because "a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision." *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

In *Neal*, the United States Court of Appeal for the Fifth Circuit held that the "focus" of

> the "unreasonable application" test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence. The latter approach appears unduly formalistic considering that the federal habeas court has the full record before it and is competent to determine whether *Strickland* has been unreasonably applied to the case before it.

283 F.3d at 246. As to state-court determinations regarding Petitioner's ineffective-assistance-of-counsel claims here, as the Fifth Circuit held in *Neal* and *Pondexter*, "[t]he precise question ... is whether the [state] court's ultimate conclusion ... is objectively unreasonable." *Pondexter*, 346 F.3d at 148-49 (quoting *Neal*, 286 F.3d at 246); *see Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning."); *see also Pondexter*, 346 F.3d at 148 ("[T]he district court's opinion is based upon the following analysis: the state court's failure to make certain, explicit findings of fact rendered unreasonable the state court's conclusion that Pondexter had failed to demonstrate that, had counsel presented Dr. Bolesta's testimony during trial, there is a reasonable probability of a different outcome. [However,] we believe that the state court's factual findings with respect to the experts' opinions are sufficient to sustain the state court's conclusion. Here, the bottom line is that the state court's denial of relief indicated that presentation of Dr. Bolesta's testimony would not have resulted in a reasonable probability of a different outcome. Even assuming that the state court failed to express certain factual findings that necessarily underlie its conclusion that Pondexter failed to demonstrate prejudice, a presumption of correctness would apply 'to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" (quoting *Valdez*, 274 F.3d at 948 n.11)).

Thus, here, although this Court reviews the entire state court record, ultimately,

as to this ground for relief, the Court is reviewing whether the determination that Petitioner's trial counsel was not constitutionally ineffective is a reasonable application of *Strickland*.

Relatedly, Petitioner also argues that the presumption of correctness fails to "attach because the state court did not assess the merits of Petitioner's claims" since the TCCA's "decision was not decided by a quorum" but, instead, the order denying the state habeas application without written order is signed by a single judge of that court. *See Ex parte Bonner*, WR-78,701-01 (Tex. Crim. App. Oct. 30, 2013). But Petitioner cites no authority holding that Article 11.07 of the Texas Code of Criminal Procedure, which "establishes the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death[,]" *id.*, and which was followed in this case, requires that a quorum of the TCCA review the findings and conclusions of a hearing judge in order for Section 2254(e)(1)'s presumption of correctness to "attach" to those findings and conclusions. The undersigned, moreover, is aware of no such authority. Accordingly, this argument is also rejected.

The Court reviews the Petitioner's Sixth Amendment claims under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

-10-

at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689.

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403, 1410 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101;

*see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, the AEDPA does not permit a *de novo* review of state trial counsel's conduct in these claims under *Strickland*. *See id.* at 785-86. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 785.

### a.   Opening statement

Petitioner first contends that his trial counsel's failure to object to statements by the prosecutor during his opening, including twice referring to Petitioner as a child predator, was constitutionally ineffective. *See* Dkt. No. 9 at 10 of 31 ("The Petitioner was prejudiced from the very beginning of his trial before the jury given the terminology used and the vehement nature by which his character and credibility were slandered. This impermissible portrayal of the Petitioner as a dangerous individual and child predator prejudiced the Petitioner. Trial defense counsel should have objected and had the trial court restrain the prosecutor's opening statement to that which the law allows. There is a reasonable probability that, but for trial counsel's deficient performance in failing to object, the result in the proceedings would have been different.").

On direct appeal, the Waco Court of Appeals addressed this claim: "The

challenged statement was objectionable to the extent that it sought to describe Bonner's character rather than focus on the facts expected to be proved. However, there are many strategic reasons why counsel may have chosen not to object to this statement, and, absent a record of the reasons for counsel's conduct, we must defer to counsel's decisions and deny such a claim of ineffective assistance." 2010 WL 3503858, at *6. And the state habeas court relied on trial counsel's affidavit, in which counsel states it was his belief, "having reviewed the State's files, that the comment was proper for the reason that the State's evidence would likely depict [Petitioner] as such," Dkt. No. 28-4 at 5, and concluded that the failure to object "was a plausible trial strategy" and that "the prosecution's remark was proper and, as such, [trial counsel] was not ineffective for failing to lodge an objection to it," *id.* at 13.

Having reviewed the state court record, the undersigned concludes that Petitioner has not shown that the determination that trial counsel was not ineffective for failing to object to improper opening statements by the prosecutor was an unreasonable application of *Strickland*. *See Harrington*, 562 U.S. at 100-01. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

### b.    Medical testimony

Petitioner next contends that his trial counsel's failure to challenge the testimony of nurses – testimony that Petitioner contends merely "repeated the versions of sexual abuse stated by L.D. and E.S. for the jury" – was constitutionally ineffective. Dkt. No. 9 at 11 of 31 ("The medical testimony only served to bolster impermissibly the

complainants' testimony and serve as a comment on their truthfulness since the medical experts were reduced to repeating the history given by the complainants, something [*State v.*] *Salinas*[, 166 S.W.3d 368 (Tex. App. – Fort Worth 2005, pet ref'd)] specifically prohibits.").

The Waco Court of Appeals addressed this issue on direct appeal and found no prejudice as to trial counsel's failure to object to this use of the testimony:

> Bonner argues that counsel was ineffective for failing to object to the testimony of the nurse who examined L.D. regarding: (1) the nurse's "diagnosis" of sexual abuse based solely on L.D.'s statements about what happened; (2) a hypothetical question regarding whether there could be no physical evidence of an assault with "full penile penetration," especially twelve months afterward; and (3) a hypothetical question regarding whether every female child is born with "a completely covered hymen."
>
> Regarding the nurse's "diagnosis," Bonner cites *Salinas v. State*, 166 S.W.3d 368 (Tex. App. – Fort Worth 2005, pet. ref'd), for the proposition that it is improper for a medical expert to make "a direct comment on the credibility of the complaining witness." *Id.* at 371. Assuming without deciding that the testimony was improper, Bonner was not harmed by its admission. *Id.* at 371-72. Thus, we cannot say that the admission of the nurse's "diagnosis" prejudiced the defense.
>
> Regarding the hypothetical questions posed to the nurse, we note that the purpose of expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Hypothetical questions are frequently employed to accomplish this purpose. *See, e.g., Taylor v. State*, 106 S.W.3d 827, 832–33 (Tex. App. – Dallas 2003, no pet.). Here, the State used the hypothetical questions at issue to help the jury understand the absence of physical evidence and to know that this is not uncommon in cases of child sexual abuse. Counsel was not ineffective for failing to object to this line of questions.

2010 WL 3503858, at *5-*7 (citation omitted); *see also* Dkt. No. 28-4 at 14 (the state habeas court concluded that "the purpose of the prosecution's question to [the nurses]

-15-

... was not improper bolstering ... [but] to explain for jury why, in a delayed outcry case such as here, physical evidence of sexual abuse would not be found in a sexual-assault examination. Therefore, [trial counsel's] failure to lodge an objection was plausible trial strategy."); *id.* at 14-15 (as to the prosecution's hypothetical concerning delayed outcry and lack of physical evidence of penetration, the state habeas court found the hypothetical to be proper, the complainants' had previously testified to no penetration, and trial counsel elicited on cross-examination of one nurse that her finding was sexual abuse with no anal or genital penetration; therefore, it was "highly unlikely that the jury would infer from the prosecution's hypothetical that [Petitioner] had also penetrated the complainants' sexual organ/anus by any means. Consequently, [trial counsel] was not ineffective for failing to lodge an objection to the prosecution's hypothetical.").

Having reviewed the state court record, the undersigned concludes that Petitioner has not shown that the determination that trial counsel was not ineffective for failing to object as to this medical testimony at trial was an unreasonable application of *Strickland*. *See Harrington*, 562 U.S. at 100-01. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

### c.    Child Sexual Abuse Accommodation Syndrome

Petitioner next contends that his trial counsel was constitutionally ineffective because he failed to challenge the qualifications of a social worker who testified at trial regarding Child Sexual Abuse Accommodation Syndrome ("CSAAS") and related its

symptoms to L.D. and failed to challenge a second, related expert for the prosecution. *See* Dkt. No. 9 at 12-13 of 31 ("This non-scientific theory was presented without defense challenge and trial defense counsel had no evidence with which to rebut this alleged theory.... Trial defense counsel failed to consult a forensic psychologist on CSAAS. No *Daubert/Kelly* request was made to test the validity of CSAAS. There is a reasonable probability that the verdict would have been different absent the excludable evidence or if trial counsel had, at least, countered with a qualified expert witness.").

Petitioner also has identified an expert, a forensic psychologist, who "could have given testimony refuting the applicability and existence of CSAAS." *Id.* at 13 of 31 (citing April 2, 2012 Affidavit of Dr. Joann Murphey [Dkt. No. 8 at 37-43]); *cf. Bonner*, 2010 WL 3503858, at *8 (on direct appeal, "Bonner [failed to] identif[y] any such experts. Nor [did] he furnish[] any documentary evidence to support his assertion that "child sexual abuse accommodation syndrome" lacks scientific validity. Thus, the record [did] not support Bonner's assertion that counsel was ineffective for failing to consult or call expert witnesses.").

As to this claim, the state habeas court found, from its own recollection and trial counsel's declaration, that trial counsel attempted to challenge the CSAAS testimony by taking one of the witness on *voir dire*, but the trial court denied counsel's request, concluding that it did not believe such testimony "rose to the level of specialized knowledge that would require expert testimony under Tex. R. Evid. 702." Dkt. No. 28-4 at 7. The state habeas court also concluded that trial counsel established through cross-examination that characteristics of CSAAS "can also be attributed to children

-17-

who have not been used. Thus, Petitioner has not shown under the second prong of *Strickland* how he was harmed by the alleged failure." *Id.* at 15-16.

Having reviewed the state court record, the undersigned concludes that Petitioner has not shown that the determination that trial counsel was not ineffective with regard to testimony concerning CSAAS was an unreasonable application of *Strickland. See Harrington*, 562 U.S. at 100-01. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

### d.    Restraints at trial

Petitioner next contends that trial counsel was constitutionally ineffective for failing to object to Petitioner being restrained in a shock belt and shackles at trial. *See* Dkt. No. 9 at 13-15 of 31 ("In the instant case, the Petitioner's ability to participate meaningfully throughout his trial was hampered by the presence of the shock belt and ankle collars and he was prejudiced thereby. Further, the use of this belt and its noticeable wear damaged the Petitioner's presumption of innocence and violated his right to a fair trial. The use of the shock belt and ankle collars in the instant case should have been objected to by trial defense counsel in order to obtain a fair trial for the Petitioner and protect his constitutional rights. The Petitioner's right to a presumption of innocence was damaged by counsel's failure to object in this regard.").

Petitioner's trial counsel testified through affidavit that he did not object to the use of the shock belt because it was placed beneath Petitioner's clothing "in such a way that was not visible to or noticeable by the jury," and the trial judge stated he could not

recall Petitioner being shackled and that the shock belt was not visible. Dkt. No. 28-4 at 7. Trial counsel's testimony and the state habeas court's own recollection led to the conclusion that trial counsel was not ineffective for failing to lodge an objection as to how Petitioner was restrained at trial. *See id.* at 16.

Having reviewed the state court record, the undersigned concludes that Petitioner has not shown that the determination that trial counsel was not ineffective for failing to object to how Petitioner was restrained at trial was an unreasonable application of *Strickland*. *See Harrington*, 562 U.S. at 100-01. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

### e.   Extraneous or bad acts evidence

Petitioner next contends that trial counsel was constitutionally ineffective for not objecting to certain extraneous or bad acts evidence:

> (1) allegedly drugging the underage, female complainants with marijuana; (2) showing them pictures and videos of child pornography; (3) molesting them on multiple occasions while at his residence; (4) physically abusive with LD, whipping her with a wooden paddle to the point where he left bruises on her spine; (5) seen by his son, NB, to be "sexing" LD; (6) pornographic items on his computer; (7) growing marijuana.

Dkt. No. 9 at 15-16 of 31.

The Waco Court of Appeals addressed the pornography evidence at some length on direct appeal:

> Officer Don Adams testified about the search of Bonner's home.
>
> ...

When Adams testified that he took the seized computers and disks to the Secret Service for examination, Bonner promptly approached the bench for a hearing outside the presence of the jury because he anticipated that Adams was about to testify that the Secret Service was going to examine these items for evidence of child pornography. The trial court excused the jury for lunch then conducted a hearing outside the jury's presence regarding the admissibility of this evidence. At the beginning of this hearing, Bonner objected that "any probative value of [the challenged evidence] is outweighed by the prejudicial effect." The State argued that the evidence was admissible because the complainants had testified that Bonner showed them "pornographic pictures of children and adults." In addition, the State proposed to offer only two 30-second video segments in order to minimize the prejudicial effect of the evidence. The court ruled that it would allow this evidence to be admitted "over [Bonner's] objections."

When the State called Deputy Jay Stubbs to testify about the pornography found on the disks, Bonner requested another hearing outside the presence of the jury. After Stubbs was questioned by both attorneys, Bonner objected on several grounds including chain of custody and relevance. The court informed the parties that it was going to permit Stubbs to testify and the State to play the two 30-second segments previously addressed.

Before the jury, Stubbs testified that he reviewed "[p]robably a hundred, hundred and fifty" of the seized disks. He estimated that "25 to 50" of these contained "some sort of pornography." Concerning the DVD the State offered in evidence, Stubbs testified that it contained "normal adult pornography" and "some of it appears to be child pornography." Before the DVD was played for the jury, Bonner re-urged his objections under "Rule 901, Rule 104(b), Rule 403, and Rule 404(b)." The court overruled these objections.

Bonner vigorously and repeatedly objected to the admission of any evidence of child pornography under Rule 403 and on other grounds. He preserved this aspect of his complaint for appellate review.

L.D. and E.S. testified that Bonner made them watch pornographic images and videos depicting both children and adults. L.D. testified that sometimes Bonner made her perform acts depicted in the pornographic images she was forced to watch. E.S. testified that he would make them

remove their clothing as they were watching the videos then sexually assault them afterward.

Based on this testimony, the evidence regarding child pornography found on the DVD's constitutes same-transaction-contextual evidence. *Redwine v. State*, No. 09–03–00566–CR, 2005 Tex. App. LEXIS 1796, at *6-7, 2005 WL 550660 (Tex. App. – Beaumont Mar. 9, 2005, no pet.) (not designated for publication); *see Wyatt v. State*, 23 S.W.3d 18, 25-26 (Tex. Crim. App.2000). The evidence of child pornography "was so intertwined with the [sexual assaults of L.D. and E.S.] that the jury's understanding of the offense[s] would have been obscured without it." *See Wyatt*, 23 S.W.3d at 25-26. This evidence was also admissible under Rule 404(b) on the issue of Bonner's intent. *See Ficarro v. State*, No. 13–03–00439–CR, 2007 Tex. App. LEXIS 3166, at *22-24, 2007 WL 1218045 (Tex. App. – Corpus Christi Apr. 26, 2007, pet. ref'd) (not designated for publication).

The evidence of child pornography is undoubtedly prejudicial. However, the State limited the visual evidence to two 30-second segments. We cannot say that the court abused its discretion by ruling that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *Id.* at *28-30.

2010 WL 3503858, at *2-*4.

That court also addressed the admission of extraneous evidence in the context of the claimed ineffectiveness of trial counsel and held that trial counsel was not ineffective because he failed to obtain a pretrial ruling to exclude evidence regarding child pornography and marijuana, first noting that "[t]o show ineffective assistance on such a claim, Bonner must show that the court abused its discretion by admitting the complained-of evidence." *Id.* at *5 (citing *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004)).

We have already determined that the court did not abuse its discretion by admitting the evidence regarding child pornography. Like that evidence, the evidence regarding the marijuana and the glass smoking pipe was admissible extraneous-offense evidence. L.D. testified that Bonner made her smoke marijuana from a glass pipe. Therefore, this

evidence was admissible as same-transaction contextual evidence.

Officer Adams made a single reference to "a quantity of methamphetamine" found in the master bedroom. Bonner promptly objected, and the trial court granted his requested limiting instruction at that juncture in the trial. Assuming without deciding that this evidence was inadmissible, we cannot say that the admission of this single reference to methamphetamine prejudiced the defense. *See Perry v. State*, No. 02–05–00469–CR, 2007 Tex. App. LEXIS 4699, at *2-3 (Tex. App. – Fort Worth June 14, 2007, pet. ref'd) (per curiam) (not designated for publication).

*Id.* (some citations omitted).

The state habeas court further concluded that trial counsel's failure to object as to Petitioner's marijuana operation "was plausible trial strategy in that this evidence was so intertwined with [Petitioner's] initial arrest and subsequent charges that separation of this evidence ... was not plausible." Dkt. No. 28-4 at 16-17 (further noting that the marijuana evidence was relevant to impeaching Amanda Bonner "had she testified unfavorably toward Petitioner").

To the extent that Petitioner is not complaining of evidence that falls into the broader categories of pornography or marijuana to which he claims it was constitutionally ineffective for counsel not to object to its admission, such as testimony concerning molestation, physical abuse, or "sexing," such evidence also appears to be part of the same transactions and provided context. As such, and having review the state court record, the undersigned finds that Petitioner has not shown that the determination that trial counsel was not ineffective for failing to object to the admission of extraneous evidence or evidence of bad acts was an unreasonable application of *Strickland. See Harrington*, 562 U.S. at 100-01; *cf. Kessler v. Dretke*, 137

F. App'x 710, 711-12 (5th Cir. 2005) (per curiam) ("Kessler argues that his trial counsel should have objected to this extraneous evidence as irrelevant and prejudicial, and that he should have requested limiting instructions with respect to its use at trial. Kessler fails to acknowledge that, under TEX. CODE. CRIM. PROC. art. 38.37 § 2, such extraneous evidence is more often admissible in cases involving sexual assaults of children, notwithstanding Texas's normal rules of evidence. Although it is possible that certain evidence introduced at Kessler's trial was inadmissible even under the expanded standard of art. 38.37, Kessler has not demonstrated that counsel performed deficiently by making a strategic decision to refrain from making repetitive objections to such evidence, or by declining to call additional attention to such evidence by seeking limiting instructions. Kessler also has not established that he was prejudiced by counsel's failures, because he has not shown that such objections or limiting instructions would have resulted in a different outcome at trial. Kessler has not shown that the state courts unreasonably applied federal law in rejecting these ineffective-assistance claims." (multiple citations omitted)). Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

### f.     Sponsoring or eliciting damaging evidence

Petitioner next contends that his trial counsel was constitutionally ineffective for sponsoring or eliciting damaging evidence before the jury, contending that "[t]here was no strategic reason to justify later calling" Gina Flores, Lisa Dodd, Karen Tutt, Det. Shannon Kimberling, and Laura Greunner, "hostile witnesses for direct

examination in a case where they would work against the defense case and offer damaging evidence a second time before the jury." Dkt. No. 9 at 16 of 31; *see also id.* at 17-18 of 31.

In addressing this claim, the state habeas court concluded that calling these witnesses was a plausible strategic choice "given the strength of the State's case, the lack of any real defense," and the timing of the sexual abuse allegations. Dkt. 28-4 at 17. That is, "their testimony was essential to [trial counsel's] establishing his theory of the case (i.e. that following the drug bust, allegiances were split along family lines and as such, the allegations of sexual abuse were fabricated to help Amanda Bonner)." *Id.*

Having reviewed the state court record, the undersigned finds that Petitioner has not shown that the determination that trial counsel was not ineffective for eliciting testimony from these witnesses was an unreasonable application of *Strickland. See Harrington*, 562 U.S. at 100-01. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

### g.     Failure to move to suppress

Petitioner contends that the majority of evidence admitted against him – most prominently, the child pornography – "was subject to suppression since the property seized was not authorized by the warrant, and the warrant was illegally executed." Dkt. No. 9 at 19 of 31; *see also id.* at 20 of 31 ("Almost every witness called by the State mentioned or discussed some aspect of the illegally seized property...."). He thus argues

-24-

that his trial counsel was constitutionally ineffective for not moving "to suppress [the] items seized in the search warrant in this case." *Id.* at 20 of 31.

As set out above, the Waco Court of Appeals upheld the trial court's admission – over Petitioner's trial counsel's "vigorous[] and repeated[] object[ions]" – of the child pornography because it was same-transaction contextual evidence. *See Bonner*, 2010 WL 3503858, at *3-*4 ("Based on th[e complainants'] testimony, the evidence regarding child pornography found on the DVD's constitutes same-transaction-contextual evidence. The evidence of child pornography was so intertwined with the sexual assaults of L.D. and E.S. that the jury's understanding of the offenses would have been obscured without it. This evidence was also admissible under Rule 404(b) on the issue of Bonner's intent." (internal citations and brackets in original omitted)); *see also* Dkt. No. 28-4 at 18 (state habeas court pointing out same).

The state habeas court concluded that Petitioner could not prove *Strickland* prejudice for trial counsel's failure to move to suppress "non-drug exhibits (i.e., computers, information contained with the computers, CD's, DVD's, cameras, financial records, guns, rifles, body armor, 'tampered' government documents) on the basis that the seizure of these items exceeded the scope of the original warrant" – even though "the seizure of these exhibits were arguably outside of the original search warrant (which authorized the search and seizure of marijuana kept, prepared, or manufactured in violation of the laws of the State of Texas)" – because "suppression of the non-drug exhibits would not have precluded testimony concerning same –

especially testimony concerning images of child pornography that were contained on the CD's/DVD's." Dkt. No. 28-4 at 18.

Having reviewed the state court record, the undersigned finds that Petitioner has not shown that the determination that trial counsel was not ineffective for moving to suppress was an unreasonable application of *Strickland. See Harrington*, 562 U.S. at 100-01. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

### h.    Failure to object to claimed prosecutorial misconduct

Petitioner next contends that trial counsel was constitutionally ineffective because, "[t]hroughout the course of trial, counsel failed to object to various forms of prosecutorial misconduct that undermined Petitioner's Due Process rights." Dkt. No. 9 at 22 of 31. Petitioner asserts that

> [t]he prosecutors' misconduct misled the jury and prejudiced the accused; was not accidental or isolated, due to the conspicuous use and emphasis of the many errors, in closing argument as well as other portions of the trial, and were flagrant and involved the central issues of the case. The prosecutor's numerous statements on witness credibility – often unsupported by any rational justification other than the assumption that Petitioner was guilty – cannot avoid suggesting to the jury that the prosecutor knows something they do not. The statements by the prosecutor were not coupled with a more detailed analysis of the evidence adduced at trial and conveyed an impression to the jury that they should simply trust the State's judgment that the complainant witnesses were credible and that the Petitioner's witnesses (specifically, the Petitioner and Nicole Brody) were incredible. This misconduct is especially prejudicial given the extent to which the jury's determination as to Petitioner's guilt or innocence hinged almost entirely, if not entirely, on the credibility of the Petitioner and the complainant witnesses.

*Id.*

Petitioner points to multiple examples in his brief. *See id.* at 22-24 of 31. And both the Waco Court of Appeals and the state habeas court have addressed – at considerable length – statements made at trial by the prosecution that Petitioner contends that his trial counsel was constitutionally ineffective for not objecting to. *See Bonner*, 2010 WL 3503858, at *11-*15; Dkt. No. 28-4 at 19-24.

The undersigned has reviewed the statements listed in Petitioner's brief. *See* Dkt. No. 9 at 21-24 of 31. But, against the "doubly deferential" standards of both *Strickland* and Section 2254(d), *Cullen*, 131 S. Ct. at 1403, 1410, the undersigned cannot conclude that "the state court's application of the *Strickland* standard" – to find that trial counsel did not violate Petitioner's Sixth Amendment rights by failing to object to the various comments – "was unreasonable." *Harrington*, 562 U.S. at 100-01. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

### i.   Failure to use a character witness

Petitioner finally contends that trial counsel was constitutionally ineffective because he failed "to investigate and interview [numerous of Petitioner's relatives and friends who Petitioner asserts were in Texas and accessible to trial counsel] and to use these witnesses to support the defense to the charges against [Petitioner]." Dkt. No. 9 at 25 of 31 (further asserting that "[t]he defense would have been greatly aided had counsel put forth the above character evidence to establish that Robert was not the

type of person to commit the crimes alleged against him" and that "[i]t would have also humanized Robert in front of the jury and made much stronger the conclusion that it is unlikely Robert would have committed these sex crimes").

The state habeas court concluded that trial counsel was not constitutionally ineffective for failing to call character witnesses from a list prepared after consulting with Petitioner. *See* Dkt. No. 28-4 at 24. One such witness, Petitioner's mother, "was of such a volatile nature that she may have hurt [Petitioner's] case by testifying." *Id.* (further indicating that the mother was involved in two prior civil proceedings stemming from this case of which trial counsel was aware and was concerned that calling her could have been detrimental – to her and to Petitioner – for this reason). The state habeas court further concluded that many of the witnesses were to be used to impeach Amanda Bonner had she testified adversely to Petitioner, which she did not. *See id.* Ultimately, the state habeas concluded that it was reasonable trial strategy not to call a character witness on Petitioner's behalf. *See id.* at 24-25 (finding that "any benefit that Petitioner may have received from their testimony about his good character had to weighed against the danger of impeachment of these witnesses and the possibility that they could open the door to other extraneous-offense evidence").

Having reviewed the state court record, the undersigned finds that Petitioner has not shown that the determination that trial counsel was not ineffective for failing to use a character witness on Petitioner's behalf was an unreasonable application of *Strickland. See Harrington*, 562 U.S. at 100-01. Petitioner has not shown that the state

court's resolution of this ineffective assistance claim was unreasonable under the doubly-deferential standard applied to *Strickland* claims.

Therefore, Petitioner's first ground for habeas relief – based on the alleged ineffectiveness of his trial counsel – should be denied in its entirety.

## II.   Ground Two – Denial of Due Process and Deprivation of a Fair Trial Through the Admission of Extraneous or Bad Acts Evidence

Through his second ground, Petitioner essentially seeks to use his Section 2254 habeas application to appeal the Waco Court of Appeals's decision affirming the trial court's admission of certain extraneous and bad acts evidence. *See* Dkt. No. 9 at 26-29 of 31. That reasoned decision is set out above in the context of Petitioner's Sixth Amendment claim related to trial counsel's failure to object to admission of same.

As another judge of this Court has observed,

> [a] federal habeas court will disturb state court evidentiary rulings on habeas review only if they render the trial fundamentally unfair. *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir. 1993); *Scott v. Maggio*, 695 F.2d 916, 922 (5th Cir. 1983). Under Texas Code of Criminal Procedure article 38.37, § 2, evidence of extraneous evidence is more often admissible in cases involving sexual assaults of children, notwithstanding Texas's normal rules of evidence. *Kessler v. Dretke*, 137 F. App'x 710, 711-12 (5th Cir. 2005) (per curiam). The admission of such evidence does not violate due process if the state "makes a strong showing that the defendant committed the offense and if the extraneous offense is rationally connected with the offense charged." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

*Gamble v. Thaler*, No. 4:12-cv-57-A, 2012 WL 2401963, at *7 (N.D. Tex. June 26, 2012) (some internal citations modified).

As discussed above, the extraneous evidence and evidence of bad acts admitted at Petitioner's trial was rationally related to the charged offenses, and "there is no evidence that admission of [this] evidence rendered the entire trial fundamentally unfair or that but for the admission of the evidence the result of petitioner's trial would have been different." *Id.* (citing *Brecht v. Abrahamsom*, 507 U.S. 619, 637 (1993)).

Petitioner's second ground for habeas relief also should be denied.

## III.   Ground Three – Suppression of Exculpatory and Impeachment Evidence

Petitioner asserts that "the failure of the prosecutors to turn over all of the paperwork associated with the initial search warrant is a *Brady* violation" and that, "[h]ad full disclosure been made by the state, trial defense counsel could have moved to suppress these items seized in the search warrant in this case." Dkt. No. 9 at 30-31 of 31.

"A successful *Brady* claim has three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Rocha v. Thaler*, 619 F.3d 387, 393 (5th Cir. 2010) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008) (nothing as to *Brady*'s third "basic element" that there must be "a reasonable probability that prejudice ensued – in other words, 'materiality'").

At a minimum, Petitioner's *Brady* claim fails because he has not shown that the paperwork in question was suppressed by the State. During the state court habeas proceedings, affidavits were submitted from an Assistant District Attorney and the Senior Chief Deputy at the Johnson County District Clerk's Office attesting to the presence of the warrant in the prosecutor's files – files made available to and accessed by Petitioner's defense counsel – and, as a public document, in the district clerk's office. *See* Dkt. No. 28-7 at 73-79.

Petitioner's third ground for habeas relief also should be denied.

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 29, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE